In the Matter of the MARRIAGE OF Susan YARBROUGH and Tommy Wayne Yarbrough and In Interest of Yanci Yarbrough, Yandy Yarbrough, and Yacy Yarbrough, Minor Children.

No. 07–85–0317–CV.

Court of Appeals of Texas, Amarillo.

Oct. 31, 1986.

Reyburn U. Anderson, Dallas, Richard D. Bird, Childress, for appellant.

Williams, McCoy & Goodall, David M. McCoy, Childress, for appellee.

Before DODSON, COUNTISS and BOYD, JJ.

BOYD, Justice.

Appellant Susan Yarbrough appeals from a decree entered by the trial court granting her a divorce from appellee Tommy Wayne Yarbrough. ° In that decree appellee was appointed managing conservator of the three minor children, Yanci, Yandy, and Yacy, and it is from that portion of the decree that appellant appeals. We affirm the judgment.

In four points of error, appellant contends that the trial court (1) abused its discretion when, at the hearing on the motion for new trial, the court failed to grant a new trial due to perjury of the appellee; (2) erred in not allowing jurors to testify at the hearing on the motion for new trial as to the effect of appellee's perjury upon the jury and as to other jury misconduct; (3) abused its discretion in refusing to listen to two jurors who approached the judge after trial but before the hearing on the motion for new trial with reports of alleged jury misconduct; and (4) abused its discretion in failing to order a new trial by not considering the best interest of the children.

In her first point appellant contends that the trial court erred in failing to grant her motion for new trial because she demon-

strated that appellee committed perjury while testifying during the trial on the merits. During his testimony at trial, appellee stated he had flown to Houston on March 19, 1984 to spend the night with appellant's uncle Will Ed Bell. He said that the two of them went to a club to meet Will Ed's girl friend and some other couples. They later went to another club and then to a restaurant. Appellee said he drank nothing but cokes all evening. After leaving the restaurant, they went to the apartment of a girl friend of Will Ed's girl friend. This woman was described by him as a "dark-headed, short, white lady." Appellee said he was laying down on the couch and then he realized that Will Ed and his girlfriend had left. He slept on the couch for the night and in the morning called Will Ed to pick him up. He denied having sexual relations with the woman and he denied that a witness in the court was the woman at whose apartment he stayed. He stated that he had never seen the woman in the courtroom before.

Nena Mayorga testified she had met appellee at a Houston club with Will Bell. She stated that appellee went to her apartment in her car and that she and appellee had a "relationship." On cross-examination she stated that Will Bell had paid for her plane ticket to testify at the trial and she "assumed" he would pay for her trip home.

Will Ed Bell also testified that appellee had gone with him to a Houston club where they met Nena, and appellee had drunk intoxicants, particularly bourbon. After they had gone to a restaurant to eat, appellee got into Nena's truck and went to her apartment. The next morning Will Ed went to Nena's apartment to pick him up.

At the hearing on the motion for new trial, appellant introduced into evidence a photograph supposedly showing appellee and Nena seated at the same table. Appellee stated in response that "the picture doesn't really look like the lady that they had here to testify, to me. It could be, but, you know." In answer to the question whether the woman was the one he spent

the night with, appellee replied that it was not. When asked if he had ever seen Nena before, he said, "[T]o the best of my knowledge, I can never remember seeing her before." He did not remember dancing with anyone that night and he said that while he could have drunk a beer, he thought he drank cokes all evening. Appellee was also confronted with a phone bill that was allegedly appellee's for the time period including his trip to Houston, which showed he had made telephone calls from the number (713) 488–2247 on March 20, 1984.

Nena Mayorga testified that her telephone number in March of 1984 was (713) 488–2247, and a phone bill was introduced showing that to be her number. She identified herself as being in the photograph taken with appellee and stated that at one point in the evening he had thrown little spit wads down her sweater. She said Will Ed Bell put his hands in front of her so appellee would stop. A picture was then introduced showing Will Ed Bell holding his hands in front of Nena. She stated that appellee was drinking beer during the evening and she testified again that she had sexual intercourse with appellee. She did not remember that there had been pictures taken at the club until the second day of trial.

Testimony was also offered by other persons present at the club that night to the effect that appellee and Nena were both at the club with them. Lloyd Bivens testified he took the pictures at the club. He said both Nena and Will Ed Bell knew he took the pictures that night.

Will Ed Bell testified he told appellant's counsel on the second day of trial that some pictures of that night might exist. He had not remembered the pictures being taken but Nena had told him about them.

Richard Bird, attorney for appellant at trial, testified he became aware that there might be some pictures on "probably" the second day of trial. Will Ed Bell told him about the pictures. Bird told opposing counsel about them but later informed him that they had not been able to find the

pictures. He did not file a motion for continuance believing one would not be granted "based upon a possibility of obtaining some pictures in the future."

John Hynson, one of appellee's attorneys, testified that on two occasions during trial a statement was made concerning the existence of some pictures. The first occasion was on the first day of trial.

David McCoy, attorney for appellee, testified that on the first day of the trial, Richard Bird approached him and said, "We may well have some pictures that show him and Miss Mayorga together."

■ A new trial based upon newly discovered evidence will not be granted unless the following elements are present: (1) admissible, competent evidence must be introduced showing the existence of newly discovered evidence; (2) the party seeking a new trial must show that there was no notice of the existence of such evidence prior to trial; (3) due diligence was used to procure the evidence prior to trial; (4) the evidence is not merely cumulative to that already given and does not tend only to impeach the testimony of the adversary; and (5) the evidence would probably produce a different result if a new trial were granted. *Wilkins v. Royal Indemnity Co.,* 592 S.W.2d 64, 68–69 (Tex.Civ.App.—Tyler 1979, no writ); *In re Y,* 516 S.W.2d 199, 205–06 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.). Unless an abuse of discretion is shown, a decision not to grant a new trial on the basis of newly discovered evidence will not be disturbed on appeal. *Wilkins v. Royal Indemnity Co.,* 592 S.W.2d at 69; *Buhidar v. Abernathy,* 541 S.W.2d 648, 652–53 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.).

■ There was no abuse of discretion by the trial court in failing to grant a new trial in this case. No explanation was presented as to why the phone bills and the testimony of other persons present at the club could not have been obtained for trial. Moreover, even assuming that the photographs could not, with the exercise of due diligence, have been produced for trial, the

evidence offered was cumulative and only tended to impeach appellee. Evidence is cumulative when it is of the same kind and tends to prove the same point as other evidence. 4 R. McDonald, *Texas Civil Practice in District and County Courts* § 18.16.4 (rev.1984). The evidence proves conclusively at most only that appellee was at some time during the evening of March 19, 1984 in the company of Nena Mayorga and made several calls from her phone the day of March 20, 1984. Appellee admitted spending the night in the apartment of some woman who he at first said was not Nena Mayorga, and later said to the best of his knowledge was not Nena Mayorga. There is some evidence that appellee was mistaken as to Ms. Mayorga's identity but the evidence does not prove conclusively that appellee deliberately lied. Therefore it only tends to impeach his credibility. The jury had ample opportunity to judge the credibility of the witnesses at trial and we cannot disturb its findings in that regard on appeal.

■ Moreover, motions for new trial on the basis of newly discovered evidence are not looked upon with favor unless it appears the evidence would probably cause a different result. The new evidence should bring to light a new and independent truth which is so decisive as to show that justice has not been obtained. *Eckert v. Smith,* 589 S.W.2d 533, 538 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.). Much testimony was offered at trial by family, friends, teachers, and a minister that both parties are loving and concerned parents. It cannot be said that the jury's verdict rested solely on the credibility of appellee's testimony in regard to the events on the night of March 19, 1984. Appellant's first point is overruled.

Appellant contends in her second point that the court should have allowed jurors to testify as to the effect that appellee's alleged perjury had on the jury. By bill of exception juror Fannie Thaten testified at the hearing on the motion for new trial that because she believed appellee was telling the truth when he said he had never seen

Nena before, she believed appellant had paid Nena to testify. She believed that three or four other jurors felt the same way. Juror Carolyn Lane also testified by bill of exception. In response to the question whether it was discussed that Nena Mayorga had been bribed to testify to a lie, she said, "That I can't swear to. I think we did. I felt that way. I know I did."

■ Tex.R.Evid. 606(b) provides:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

The mental processes of a juror are indicated when jurors use such words as "I thought," "I understood," "I wanted," "I felt," "I was concerned," "the impression I got," or "I considered." *Cortez v. Medical Protective Co. of Ft. Wayne,* 560 S.W.2d 132, 137 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.). The offered testimony was of the same type the rule was intended to exclude and therefore the trial court properly refused to admit the testimony of these two witnesses regarding the effect of appellee's alleged perjury.

The same two jurors also sought to testify as to jury misconduct. Ms. Lane testified that a Ms. Meadows said to the jurors that "she knew Tommy's [appellee's] mother and sister in Wellington, that they were both real nice people, and that she was sure that they would help Tommy [appellee] take care of the children." In response to the question of whether she considered that testimony, she said, "I think so, yes, in the overall picture of what I was consider-

ing." Someone else mentioned a man named Pat Horn and "that he was doing a good job raising his children by himself." None of this testimony had been offered as evidence at trial.

Ms. Thaten repeated in her testimony the statement made by Ms. Meadows. She could not say if anyone else was able to hear the statement and she did not consider that statement in her decision. Neither did she consider the statement concerning Pat Horn.

■ Tex.R.Civ.P. 327(b) specifically provides in regard to the issue of jury misconduct:

A juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict concerning his mental processes in connection therewith, except that a juror may testify whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

The testimony offered by the two jurors falls within the parameters of this rule and was properly excluded by the trial court. No other evidence of misconduct was offered. Thus, appellant's second point is overruled.

In her third point appellant contends the trial court abused its discretion by refusing several weeks after trial but before the hearing on the motion for new trial to listen to these two jurors regarding the alleged jury misconduct. The trial was held on June 11, 1985 and on September 9, 1985 a motion for new trial was filed based, among other reasons, on alleged acts of jury misconduct. The record reveals that on September 20, 1985 two jurors desiring to report acts of jury misconduct met with the trial judge who informed them that any discussion without all parties present

would be improper and he could only hear their remarks at the hearing on the motion for new trial. That hearing was scheduled to be held and was held on September 26, 1985.

█ Appellant has cited us no authority to support her contention that the trial court erred in refusing to hear these jurors and we cannot see that the trial judge acted improperly in doing so. The jurors did not approach the judge with a request to be heard until over three months after trial. At that time, a hearing on the motion for new trial had already been scheduled only six days away to deal with the very issues sought to be presented by the jurors. Nothing was to be accomplished by the judge receiving this testimony outside of the courtroom. We also note parenthetically that the record indicates that after presenting these two jurors to the trial judge and seeking to have them privately heard by the judge, which the judge refused to do, appellant's counsel sought by oral motion, and ultimately received, the trial judge's recusal. Appellant's point of error is without merit and is overruled.

In her fourth point, appellant contends the court abused its discretion by not considering the best interest of the children. Appellant apparently refers to certain acts of "cruelty" testified to by the children at the hearing after trial on the motion to suspend the delivery of the children to appellee pending the appeal. Yanci Yarbrough, age ten, testified that she is afraid to go with her father because she is afraid he will take her away and not bring her back to her mother. She also said her father is critical of her and her brother and sister and that she wants to live with her mother. She testified to an incident when her father pulled her out of the bathtub by her hair and made her answer the telephone. Yanci also said appellee had picked her brother up by the ears and had kicked him. Yandy Yarbrough, who was eight at the time of the hearing, testified he would rather live with his mother because his father is always "griping" at him.

█ The children's testimony was not part of the testimony presented on the motion for new trial. Even if it had been, there was no abuse of discretion by the trial court. The best interest of the children is the primary concern of the court and the testimony of the children is not controlling. *Radtke v. Radtke*, 521 S.W.2d 749, 751 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ). The jury observed the witnesses and heard the testimony at trial, including testimony as to appellee pulling his daughter out of the bathtub and kicking his son, and found that appellee should be appointed managing conservator. The judge rendered judgment in accordance with that verdict. As we have previously noted, there was also ample testimony from family, friends, and teachers that appellee and appellant were both loving parents. No additional testimony offered showed considerations which would seriously affect the children's best interest that were overlooked or omitted at trial, and no abuse of discretion may be shown unless evidence not offered at the original trial shows the custody order would have a serious adverse affect on the interest and welfare of the children and that presentation of that evidence would probably change the result. *Gaines v. Baldwin*, 629 S.W.2d 81, 83 (Tex.App.—Dallas 1981, no writ). Moreover, the trial court's action in leaving the children with appellant pending the appeal cannot be interpreted to mean the court believed the jury had erred in its verdict. The court clearly stated that it did so because it did not "want to shuffle these children any more than is absolutely necessary." Appellant's fourth point is overruled.

In summary, all of appellant's points are overruled and, there being no reversible error, the judgment of the trial court is affirmed.