Gregg **KIRKPATRICK** and Cynthia Kirkpatrick, Individually and as Natural Parents of Joshua Kirkpatrick, a Minor, Appellants,

v.

**MEMORIAL HOSPITAL OF GARLAND, Appellee.**

No. 05–91–00251–CV.

Court of Appeals of Texas, Dallas.

Sept. 9, 1993.

Rehearing Denied Oct. 18, 1993.

Dan S. Boyd, Vic Terry, Warren R. Hays, David Terry, G.P. Hardy, III, Dallas, for appellants.

Michael W. Huddleston, Jim Cowles, Dallas, for appellee.

Before BAKER, BURNETT and ROSENBERG, JJ.

## OPINION

BAKER, Justice.

This is a medical malpractice case. Based upon the jury's answers of none to the two damage issues submitted by the court, the court entered a take nothing judgment against the Kirkpatricks.

In this appeal, the Kirkpatricks contend the trial court erred by submitting a definition of the phrase "occurrence in question" and in refusing to submit their requested instructions and questions to the jury. They complain the trial court erred in overruling their motion to limit the Hospital to cross-examination on the subject of damages only. They complain the trial court erred in overruling their motion for new trial because the jury's answers to the damage questions were against the great weight and preponderance of the evidence. Finally, they contend the trial court erred in overruling their motion for new trial because of newly discovered evidence and because the Hospital fraudulently concealed material evidence.

The Hospital asserts one cross-point, contending the trial court abused its discretion by striking the Hospital's pleadings as a sanction for discovery abuse.

We overrule the Kirkpatricks' points of error. Because we overrule the Kirkpatricks' point of error, we do not reach the Hospital's cross-point of error. We affirm the trial court's judgment.

## FACTUAL BACKGROUND

Cynthia Kirkpatrick was a patient at the Memorial Hospital of Garland when her son, Joshua Kirkpatrick, was born on July 13, 1985. Joshua has cerebral palsy. Cerebral palsy is a motor disfunction due to damage to the brain. Mrs. Kirkpatrick had been to the Hospital two times during her pregnancy for premature labor. Her doctor admitted her to the Hospital on July 7, 1985, six days before Joshua's birth. When Mrs. Kirkpatrick delivered Joshua on July 13, 1985, he was seven to eight weeks premature.

Because of the history of Mrs. Kirkpatrick's pregnancy with Joshua, the doctors and hospital staff members knew this was a high risk pregnancy.

## THE PROCEDURAL HISTORY

The Kirkpatricks, individually and for their son, initially sued the obstetrician, another physician, an attending nurse, and the Hospital. The Kirkpatricks alleged acts of negligence during Mrs. Kirkpatrick's labor and Joshua's delivery process. The Kirkpatricks settled their claim against the obstetrician and dismissed their claims against the other physician and nurse. Thus, the Hospital was the sole remaining defendant at the time of trial.

About halfway through the trial, after the Kirkpatricks had presented their medical evidence on causation, the Kirkpatricks learned that the Hospital had never identified or disclosed the name of a respiratory therapist who was in the delivery room when Mrs. Kirkpatrick gave birth to Joshua. The Kirkpatricks moved for sanctions for this alleged discovery abuse. After a hearing, the trial court granted the Kirkpatricks' motion and struck the Hospital's pleadings. The trial court granted a default judgment against the Hospital on the liability issue.

After the court entered the sanctions order, the plaintiffs located the previously unidentified respiratory therapist and produced her as a witness during the trial. This witness's testimony corroborated the testimony of another nurse about Joshua's poor condi-

tion at birth. The Kirkpatricks characterize the respiratory therapist's testimony as the most negative of any view of Joshua's appearance and activity level at birth.

The trial court submitted an instruction on the definition of "occurrence in question" to the jury, together with two damage issues. The jury answered "none" to both damage issues. After the trial, the Kirkpatricks moved for a new trial based upon newly discovered evidence, concealment of material evidence by the Hospital, and the trial court's error in allowing the Hospital to put on evidence about the cause of Joshua's injuries. The Kirkpatricks also claimed that the jury's answers to the damage questions were against the overwhelming weight of the evidence and grossly inadequate. The Kirkpatricks supported this motion for a new trial with affidavits of their attorneys and an affidavit and statement of the respiratory therapist. After an evidentiary hearing, the trial court overruled the Kirkpatricks' motion for a new trial.

## THE FACTUAL THEORIES OF THE PARTIES

### A. The Kirkpatricks

The Kirkpatricks contend Joshua's cerebral palsy resulted from a brain injury that occurred when Mrs. Kirkpatrick was in the Hospital. They contend the Hospital negligently rendered medical services to Mrs. Kirkpatrick and Joshua during her labor and his birth. The Kirkpatricks' experts described this event as a "hypoxic/ischemic insult"[1] to the brain occurring during the active labor or delivery.

### B. The Hospital

The Hospital's theory of the case was that Joshua's cerebral palsy did not result from any negligent acts of the Hospital during his delivery but existed long before Mrs. Kirkpatrick went into active labor. The Hospital's experts contended that Joshua suffered

---

1. Hypoxia is a decrease in oxygen supply to a particular tissue or area of the body. Ischemia is a decrease in blood flow to a certain area of the body.

from partial agenesis[2] of the corpus callosum,[3] which occurred within twelve to twenty weeks after conception. The Hospital's experts also contended Joshua had a brain abnormality identified as periventricular leukomalacia.[4] In essence, the Hospital's position was that Joshua's neurological deficits resulted from a congenital brain malformation unrelated to the Hospital's medical services.

## THE DEFINITION

In their first point of error, the Kirkpatricks contend the trial court erred in defining the phrase "occurrence in question." The Kirkpatricks assert the term does not require a definition and as defined by the trial court put an unduly heavy burden on them. In their second point of error, the Kirkpatricks again complain of the trial court's definition of "occurrence in question" with the trial court's rendition of judgment and in overruling their motion for new trial. In their third point of error, the Kirkpatricks contend the trial court erred in refusing to submit their instruction defining injury and their questions about damages.

### A. The Trial Court's Charge to the Jury

The trial court submitted one definition and two jury questions applicable to the case. These were:

1. "Occurrence in question" means "the medical services provided by Memorial Hospital of Garland from July 7, 1985 through the delivery of Joshua Kirkpatrick."

2. Question No. 1: What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Joshua Kirkpatrick for his injuries, if any, that resulted from the occurrence in question?

3. Question No. 2: What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Gregg and Cynthia Kirkpatrick for their damages as a result of the injuries and damages, if any, sus-

tained by Joshua Kirkpatrick from the occurrence in question?

### B. The Kirkpatricks' Objections

The trial court initially defined the term "occurrence in question" to mean "the medical services provided by Memorial Hospital of Garland during the labor leading to the delivery of Joshua Kirkpatrick." The Kirkpatricks made both oral and written objections to the trial court's initial definition of the phrase.

### 1. The Kirkpatricks' Oral Objection

When the court gave the parties the opportunity to make oral objections to the charge, the Kirkpatricks' counsel objected as follows:

[THE KIRKPATRICKS' COUNSEL]: We object to the court's charge in the following: The instruction given by the court to the jury, the occurrence in question means medical services provided by Memorial Hospital of Garland during the labor leading to the delivery of Joshua Kirkpatrick is, first, restrictive: There is evidence in this record to support a potential jury finding that the medical treatment care given Cindy Kirkpatrick and, consequently, Joshua Kirkpatrick could have been substandard from the date of hospitalization July 7, 1985.

And this particular instruction is restrictive in that sense, and as such, constitutes a comment on the evidence by the court.

And we suggest that the appropriate instruction should be "occurrence in question" means the medical services provided by Memorial Hospital of Garland from July 7, 1985 through the delivery of Joshua Kirkpatrick on July 13, 1985. If the court is going to include an instruction ... we object to it because we think the instruction is a comment by the court on the evidence.

. . . . .

---

2. Absence, failure of formation, or imperfect development of any part of the body.

3. The corpus callosum is the fibrous membrane that connects the two hemispheres of the brain.

4. Periventicular leukomalacia results from loss of tissue surrounding the lateral ventricals of the brain.

[THE COURT]: I'm going to change that instruction. The instruction will read "occurrence in question" means the medical services provided by Memorial Hospital, Garland, from July 7, 1985, through the delivery of Joshua Kirkpatrick, period.

[THE KIRKPATRICKS' COUNSEL]: I appreciate the court's change. I simply don't think that an instruction of this sort is necessary and I object to it.

[THE COURT]: Then you have got an objection to the instruction anyway?

[THE KIRKPATRICKS' COUNSEL]: Right—

[THE COURT]: Overruled.

[THE KIRKPATRICKS' COUNSEL]: —as a comment on the evidence by the court.

## 2. The Kirkpatricks' Written Objections

The Kirkpatricks submitted written objections to the trial court's charge. These objections complain of the trial court's definition of the phrase "occurrence in question" because:

a. the pleadings do not support the submission of a definition;

b. the definition imposes a greater burden of proof on the plaintiffs than required had the court not granted a default judgment on liability;

c. the definition constitutes a comment by the court on the evidence;

d. the definition misleads the jury because it focuses the jury's attention on an erroneous theory of recovery;

e. the definition does not aid the jury in determining any of the material facts in dispute; and

f. the definition was not legally correct.

The record does not reflect whether the Kirkpatricks presented these objections to the trial court, nor does the record contain an order disposing of these objections.

## 3. The Kirkpatricks' Requested Instructions and Questions

The Kirkpatricks requested a definition of the word injury and the submission of two jury questions:

a. Injury means damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom, or the incitement, acceleration, or aggravation of any disease, infirmity, or condition, previously or subsequently existing by reason of such damage or harm.

b. What sum of money, if any, if now paid in cash, would fairly and reasonably compensate Gregg and Cynthia Kirkpatrick for their damages, if any, as a result of the injuries sustained by Joshua Kirkpatrick?

c. What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Joshua Kirkpatrick for his damages, if any, that resulted from his injuries?

## C. The Hospital's Response

The Hospital argues the Kirkpatricks' oral objections are inadequate to preserve error because they were too general and are not the same objections that the Kirkpatricks argue on appeal.

The Hospital argues the Kirkpatricks' written objections preserve no error because there is nothing in the record to show that the Kirkpatricks timely presented the objections to the trial court or that the trial court ruled on these written objections. The Hospital also argues that the definition submitted was the definition requested by the Kirkpatricks' counsel and that counsel invited the error.

In response to the Kirkpatricks' third point of error, the Hospital argues that the Kirkpatricks' requested definitions and questions would have allowed the Kirkpatricks to recover damages regardless of the source of Joshua's injuries. The Hospital contends that while there is no dispute that Joshua sustained brain damage, there was a disputed issue about whether the brain damage was congenital or the result of the Hospital's negligence. The Hospital argues that submission of the issues the Kirkpatricks requested would have omitted inquiry about the source of the cerebral palsy. The Hospital further contends that the Kirkpatricks' request is not sufficient to preserve error. The Hospital argues that when the court's charge contains an alleged defective ques-

tion, a request of even a correctly worded question submitting the same issue does not preserve error.

## APPLICABLE LAW

### A. The Applicable Rules

Rule 272 of the Texas Rules of Civil Procedure[5] provides that the charge shall be in writing and submitted to the parties or their attorneys for their inspection and a reasonable time given to examine and present objections to the charge outside the presence of the jury. The rule provides that the parties shall present objections to the court in writing or dictated to the court reporter in the presence of the court and opposing counsel before the court reads the charge to the jury. A party waives any objections that it does not present before the court reads the charge to the jury. The rule further requires the court to announce its rulings on the objections before reading the charge and endorse the rulings on the objections if written or dictate the same to the court reporter in counsel's presence.

Rule 274 provides that a party waives any complaint about a question, definition, or pleading fault unless the party specifically includes the complaint in an objection.

### B. Applicable Case Law

■ Rule 272 requires a party to object to the court's charge, either orally or in writing, before the court reads the charge to the jury. If the party does not present the objections to the court before the court reads the charge to the jury, the party waives that objection. *Gale v. Spriggs*, 346 S.W.2d 620, 626 (Tex.Civ.App.—Waco 1961, writ ref'd n.r.e.); *Hicks v. Fredericks*, 286 S.W.2d 315, 317 (Tex.Civ.App.—Beaumont 1955, no writ). The record must show that the party presented the objections to the court for its ruling or endorsement. The failure of a party to obtain the trial court's ruling and endorsement on the objections to the court's charge does not preserve those objections for appellate review. TEX.R.APP.P. 52(a); *Hernandez v. Montgomery Ward & Co.*, 652 S.W.2d 923, 925 (Tex.1983); *Garfield Mut.*

*Fire & Storm Ins. v. Calhoun*, 532 S.W.2d 663, 667 (Tex.Civ.App.—Corpus Christi 1975, no writ).

■ Objections to the court's charge in a motion for mistrial filed after the jury's verdict are too late to preserve error. *See Hicks*, 286 S.W.2d at 318. Objections to the charge in a motion for a new trial are untimely and preserve nothing for review. *See Gale*, 346 S.W.2d at 626.

■ The proper method to complain when a particular instruction or issue included in the charge is defective is by objection. *Hernandez*, 652 S.W.2d at 924. Rule 274 requires a specific objection pointing out the matter complained of and the ground of the objection. *See* rule 274. The purpose of the rule is to afford trial courts an opportunity to correct errors in the charge by requiring objections both clearly to designate the error and to explain the grounds for complaint. *See Wilgus v. Bond*, 730 S.W.2d 670, 672 (Tex.1987); *Castleberry v. Branscum*, 721 S.W.2d 270, 276 (Tex.1986). If the objection does not comply with rule 274, the party waives the complaint. *Wilgus*, 730 S.W.2d at 672; *Hernandez*, 652 S.W.2d at 924. Though an instruction may be erroneous, a party waives the error if he does not properly object. *Castleberry*, 721 S.W.2d at 276.

■ Objections to the charge and requests for submission of issues are not alternatively permissible methods of complaining of the charge. *Hernandez*, 652 S.W.2d at 925. A request for another charge is not a substitute for an objection. *Hernandez*, 652 S.W.2d at 925. When a defectively framed question is in the trial court's proposed charge, the tender of even a correct question does not preserve error. *Hernandez*, 652 S.W.2d at 925.

### C. Application of Law to the Facts

The Kirkpatricks' counsel first objected to the court's definition of "occurrence in question" because it was too restrictive and was a comment on the evidence by the court. Counsel then dictated a change that counsel asserted was an appropriate instruction.

**5.** All references to the rules are to the Texas Rules of Civil Procedure unless otherwise stated.

The court agreed and amended the instruction to read exactly as the Kirkpatricks' counsel requested. The Kirkpatricks' counsel then objected on the grounds that he did not think the instruction was necessary because it was a comment on the evidence by the court. Appellants' complaint on appeal fails for two reasons.

First, the court's instruction was given in response to the Kirkpatricks' objection to the instruction in the first draft of the charge. The Kirkpatricks invited any error resulting from submitting the definition to the jury. *See John F. Buckner & Sons v. Allen,* 289 S.W.2d 387, 401 (Tex.Civ.App.—Austin 1956, no writ). Second, the objection made after the court amended the instruction that it was not necessary and was a comment on the evidence was too general to preserve error. The objection does not meet the requirements of rule 274. *See Baker Material Handling Corp. v. Cummings,* 692 S.W.2d 142, 145 (Tex.App.—Dallas 1985), *writ dism'd by agreement,* 713 S.W.2d 96 (Tex. 1986); *see Corpus Christi Bank & Trust v. Roberts,* 587 S.W.2d 173, 185 (Tex.Civ.App.—Corpus Christi 1979), *reformed and aff'd on other grounds,* 597 S.W.2d 752 (Tex.1980). We conclude the Kirkpatricks did not preserve error for appellate review on their oral objections to the court's definition of "occurrence in question."

The Kirkpatricks' written objections to the charge recite the Kirkpatricks presented them before the court read the charge to the jury. The record does not show the trial court ruled on the Kirkpatricks' written objections. Because the Kirkpatricks did not comply with rule 272, they preserved nothing for appellate review on their written objections to the charge. *Hernandez,* 652 S.W.2d at 925; *Garfield Mut. Fire & Storm Ins.,* 532 S.W.2d at 667. We conclude the Kirkpatricks have not preserved their written objections to the court's charge for review. We overrule point of error number one.

In their second point of error, the Kirkpatricks argue the trial court erred in rendering judgment overruling their motion for new trial because the court's definition of "occurrence in question" put an unduly heavy burden on them. Objections to the court's charge made in a motion for new trial after the jury reaches a verdict are too late and do not preserve error for review. Rule 272; *Gale,* 346 S.W.2d at 626; *see also Jim Sanders Ford Co. v. Ontiveros,* 389 S.W.2d 614, 615 (Tex.Civ.App.—Waco 1965, no writ). We overrule point of error number two.

In their third point of error, the Kirkpatricks argue that because the trial court's definition of "occurrence in question" was improper, the trial court also committed reversible error because it did not submit the instruction and questions requested by the Kirkpatricks. A request for another charge is not a substitute for an objection. *Hernandez,* 652 S.W.2d at 925. When the court's charge contains a defectively framed definition or question, the tender of a correct question does not preserve error. *Hernandez,* 652 S.W.2d at 925. We overrule point of error number three.

## THE EVIDENCE AND THE DAMAGES

### A. The Kirkpatricks' Motion to Limit Cross–Examination

In their fourth point of error, the Kirkpatricks contend the trial court erred in denying their motion to limit the Hospital to cross-examining witnesses on the subject of damages alone. The Kirkpatricks also claim the trial court erred in entering judgment and overruling their motion for new trial for the same reason.

### 1. The Kirkpatricks' Position

The court struck the Hospital's pleadings and granted the Kirkpatricks a default judgment on liability. Before the Hospital put on its evidence, the Kirkpatricks moved the trial court to prohibit the Hospital's witnesses from testifying about any facts except mitigation of damages. The motion also asked the court to limit the hospital to cross-examination of the Kirkpatricks' witnesses on damages alone. The trial court overruled this motion. The Kirkpatricks argue that the trial court allowed the Hospital's experts to testify there was no causal connection between the Hospital's negligent conduct and Joshua's cerebral palsy.

The Kirkpatricks argue that allowing the Hospital to present its case was contrary to the default judgment and carried the possibility of jury confusion. They contend the trial court's rulings were erroneous under established authority. They argue that under the default judgment circumstances, all they had to do was to come forward with competent evidence to show the connection between Joshua's injuries and the Hospital's negligent conduct.

### 2. The Hospital's Response

The Hospital argues that it was proper for the trial court to permit it to put on evidence to show that a pre-existing congenital brain malformation caused Joshua's cerebral palsy. The Hospital argues the testimony was both relevant and proper.

### B. Were the Damages Manifestly Too Small?

In their fifth point of error, the Kirkpatricks contend the trial court erred in overruling their motion for new trial because the damages were manifestly too small and the jury's answers to the damage questions were against the overwhelming weight of the evidence.

### 1. The Kirkpatricks' Contentions

The Kirkpatricks note that their evidence showed Joshua has cerebral palsy. His condition is permanent; he will always require active care and supervision. They presented expert testimony that the cost of Joshua's lifetime nursing and supervisory care would be between 5.7 million and 9 million dollars. These amounts do not include any damages of any other kind.

The Kirkpatricks claim the Hospital did not controvert their damages evidence. They argue that because their evidence is conclusive on the *amount* of damages, the jury's answer of none to the two damage questions is against an overwhelming weight of the evidence and manifestly inadequate.

### 2. The Hospital's Response

The Hospital argues that the jury's answers to the damage questions were entirely appropriate. The Hospital contends that the jury's negative answer to the damage questions means that the Kirkpatricks did not convince the jury that the Hospital's negligent medical services during labor and delivery was the cause of Joshua's cerebral palsy. The Hospital argues it produced evidence that the cause of Joshua's cerebral palsy was a pre-existing congenital malformation not connected with the Hospital's medical services. The Hospital contends that when there is conflicting evidence on the cause of damages, a negative answer to that issue by the jury means that the Kirkpatricks did not discharge their burden of proving that fact.

### C. Applicable Law

#### 1. Evidence—Standard of Review

On appeal, the standard of review for whether the trial court erred in admitting evidence is an abuse of discretion standard. TEX.R.CIV.EVID. 104(a); *Steenbergen v. Ford Motor Co.*, 814 S.W.2d 755, 760 (Tex.App.—Dallas 1991, writ denied), *cert. denied,* —— U.S. ——, 113 S.Ct. 97, 121 L.Ed.2d 58 (1992).

A party may cross-examine a witness on any matter relevant to any issue in the case, including credibility. TEX.R.CIV.EVID. 611(b). Evidence is relevant if it tends to show probability of the existence of a material fact. TEX.R.CIV.EVID. 401. Relevant evidence is admissible. TEX.R.CIV.EVID. 402. The trial court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleads the jury, delays the trial, or is needless presentation of cumulative evidence. TEX.R.CIV.EVID. 403.

#### 2. Great Weight and Preponderance of the Evidence—Standard of Review

In considering a point of error that the jury's negative answer to an issue is against the great weight and preponderance of the evidence, we look to the entire record. We consider all the evidence, both that which is favorable to the verdict and contrary to the verdict. We set aside the judgment and remand the cause for a new trial only if we conclude that the verdict is so against the

great weight and preponderance of the evidence that it is manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *Blount v. Earhart,* 657 S.W.2d 898, 899 (Tex.App.—Tyler 1983, no writ).

When we review the evidence, we are not free to reweigh the evidence and set aside a jury verdict merely because we feel a different result is more reasonable. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 634 (Tex.1986); *Dyson v. Olin Corp.,* 692 S.W.2d 456, 458 (Tex.1985) (Robertson, J. concurring). The jury is the sole judge of the witnesses' credibility and the weight given their testimony. *Leyva v. Pacheco,* 163 Tex. 638, 358 S.W.2d 547, 549 (1962). The jury may believe one witness and disbelieve another. *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex. 1986). The jury may resolve inconsistencies in any witness's testimony. *McGalliard,* 722 S.W.2d at 692.

It is particularly within the jury's province to weigh opinion evidence and the judgment of experts. *Pilkington v. Kornell,* 822 S.W.2d 223, 230 (Tex.App.—Dallas 1991, writ denied). The jury decides which expert witness to credit. *Pilkington,* 822 S.W.2d at 230.

If the jury has evidence sufficient that reasonable minds could differ, we may not substitute our judgment for that of the jury. *Herbert v. Herbert,* 754 S.W.2d 141, 144 (Tex.1988); *Pool,* 715 S.W.2d at 634. In considering great weight points complaining of a jury's failure to find a fact, we must be mindful that a preponderance of the evidence did not convince the jury. We may not reverse merely because we conclude that the evidence preponderates toward an affirmative answer. *Herbert,* 754 S.W.2d at 144.

### 3. *Morgan* Analysis

In a personal injury case, a plaintiff must establish two causal nexuses to recover. These are:

(1) A causal nexus between the defendant's conduct and the events sued upon; and

(2) A causal nexus between the events sued upon and the plaintiff's injuries.

*See Morgan v. Compugraphic Corp.,* 675 S.W.2d 729, 731 (Tex.1984). The causal nexus between the defendant's conduct and the events sued upon relates to the liability part of a plaintiff's cause of action. Liability means legal responsibility for the event upon which the plaintiff bases the suit. *Morgan,* 675 S.W.2d at 732. In a negligence action, the plaintiff shows liability by proving that the defendant's negligent conduct was a proximate cause of the event sued upon. When by virtue of sanctions the trial court strikes a defendant's pleadings, the effect is that the defendant admits the causal nexus between the defendant's conduct and the event sued upon. *Morgan,* 675 S.W.2d at 732.

However, whether the event sued upon caused injuries to the plaintiff is another matter entirely. The causal nexus between the event sued upon and the plaintiff's injuries is strictly referable to the damages part of the plaintiff's cause of action. *Morgan,* 675 S.W.2d at 732. Although the default establishes liability, the plaintiff must prove the causal nexus between the event sued upon and his injuries as part of the proof to determine the amount of damages a plaintiff may recover. *Morgan,* 675 S.W.2d at 732. This is true because the plaintiff may recover damages only for those injuries caused by the event made the basis of the suit. That the defendant has defaulted does not give the plaintiff the right to recover for damages which did not arise from his cause of action. *Morgan,* 675 S.W.2d at 732.

Concluding that a defaulting defendant does not admit that the event sued upon caused any of the plaintiff's alleged injuries is entirely consistent with the rule that a default judgment admits all the factual allegations in the plaintiff's petition except the amount of damages. *See Morgan,* 675 S.W.2d at 732.

"Proof" of damages consist of two parts:

First, the plaintiff must prove the event sued upon caused the plaintiff's injuries; and

Second, the plaintiff must put on evidence about the amount of the damages the plaintiff may recover.

The plaintiff must prove both these elements by competent evidence. *See* TEX.R.CIV.P. 243; *Morgan*, 675 S.W.2d at 732.

■ After the rendition of a default judgment as a sanction, a defendant's right to cross-examine witnesses about damages does not extend to asking about matters involving the basis of the default judgment. The trial court may properly prohibit the sanctioned defendant from presenting any grounds of defense to the plaintiff's cause of action. *See City of Dallas v. Cox*, 793 S.W.2d 701, 730 (Tex.App.—Dallas 1990, no writ). However, this does not mean that a defendant may not put on evidence by cross-examining plaintiff's witnesses or presenting its own witnesses to show that the event made the basis of the plaintiff's suit did not cause the plaintiff's injuries. *Morgan*, 675 S.W.2d at 732; *see also Fleming Mfg. Co. v. Capitol Brick, Inc.*, 734 S.W.2d 405, 408 n. 6 (Tex.App.—Austin 1987, writ ref'd n.r.e.).

■ In the trial on the question of damages, the defaulting defendant has the right to be heard and participate. *Maywald Trailer Co. v. Perry*, 238 S.W.2d 826, 827 (Tex.Civ.App.—Waco 1951, writ ref'd n.r.e.). The right to participate includes the opportunity to present evidence to defeat the plaintiff's action by showing that the event alleged as the basis for the plaintiff's cause of action caused no damages to that plaintiff. *Bass v. Duffey*, 620 S.W.2d 847, 849–50 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ); *Maywald*, 238 S.W.2d at 827.

### D. Application of Law to the Facts

#### 1. The Damages Evidence

■ In our view, *Morgan* means that during trial a defaulted defendant has the right to participate not only by cross-examining the plaintiff's witnesses but also to adduce evidence of his own that the event made the basis of the plaintiff's suit did not cause the plaintiff's injuries. *Morgan*, 675 S.W.2d at 732; *Transport Concepts, Inc. v. Reeves*, 748 S.W.2d 302, 304 (Tex.App.—Dallas 1988, no writ); *Duffey*, 620 S.W.2d at 850. We hold the Hospital had the right to cross-examine the Kirkpatricks' expert witnesses beyond the scope of damages alone. We

hold the Hospital had the right to put on its own expert witnesses to defeat the Kirkpatricks' claim that the event sued upon caused their damages. Evidence that Joshua's brain insult because of the Hospital's negligent medical services during labor and delivery was not the cause of Joshua's cerebral palsy but the cause was a pre-existing congenital malformation was relevant evidence. We conclude the trial court did not abuse its discretion in overruling the Kirkpatricks' motion to limit the Hospital's cross-examination of the plaintiff's witnesses on the issue of the amount of damages alone. We overrule the Kirkpatricks' fourth point of error.

#### 2. The Damages

■ The Kirkpatricks argue that because the Hospital did not controvert the evidence about the amounts necessary to provide Joshua lifetime nursing care and supervision, the jury's answer of "none" to the two damage issues is against the great weight and preponderance of the evidence and manifestly unjust. The Kirkpatricks miss the point.

The jury's answers of "none" to the damage issues implicate the first part of the Kirkpatricks' burden of proof of "damages." *See Morgan*, 675 S.W.2d at 732. That burden required the Kirkpatricks to convince the jury that the event sued upon, the brain injury Joshua sustained because of the Hospital's negligent medical services, was the cause of Joshua's cerebral palsy. If the evidence conflicted on this question, the jury could answer "none" to those issues regardless of the fact that the evidence about the amounts of the damages for nursing care, supervision, or other damage elements was uncontroverted.

At trial, the Kirkpatricks contended that Joshua's cerebral palsy resulted from the brain injury due to the Hospital's negligent medical services. They argued that their expert testimony described this event of injury as a "hypoxic/ischemic insult" to the brain occurring during the active labor or delivery. To the contrary, the Hospital's experts provided evidence that Joshua's cerebral palsy was a result of a congenital brain malformation that developed between twelve and twenty weeks after conception. This issue

was the hotly contested at the trial. The evidence was such that reasonable minds could differ about the conclusion to draw on the cause of the cerebral palsy.

Considering and weighing all the evidence on the question before the jury, we conclude the jury was not convinced by a preponderance of the evidence that Joshua's cerebral palsy was a result of the Hospital's negligent medical services rather than a congenital brain malformation that occurred before Joshua's birth. Considering all the evidence, we conclude the evidence is factually sufficient to support the jury's findings. Considering and weighing all the evidence, we are unable to state how the contrary evidence greatly outweighs the evidence in support of the jury's findings. *See Pool,* 715 S.W.2d at 635.

We cannot conclude that the jury's findings are so against the great weight and preponderance of the evidence that they are manifestly unjust, that the jury's findings shock the conscience of this Court, or that the jury's findings clearly demonstrate bias. *See Pool,* 715 S.W.2d at 635. We hold the jury's findings of "none" to the damage questions is not so against the great weight and preponderance of the evidence that the answers are clearly wrong and manifestly unjust. We overrule the Kirkpatricks' fifth point of error.

## NEWLY DISCOVERED EVIDENCE— FRAUDULENT CONCEALMENT

In their sixth point of error, the Kirkpatricks contend the trial court erred in overruling their motion for new trial on newly discovered evidence. In their seventh point of error, they contend the trial court erred in overruling their motion for new trial and motion for mistrial because the Hospital's fraudulent concealment of material evidence resulted in a fundamentally unfair trial.

### A. The Kirkpatricks' Contentions

The Kirkpatricks contend that the newly discovered evidence is Amy Ellis Hall's post trial refreshed recollection of Joshua's birth. They contend the Hospital fraudulently concealed her existence. They argue it is undisputed that the Hospital did not identify her in response to appropriate discovery initiatives and did not identify her as a person present at delivery or involved in Joshua's treatment. The Kirkpatricks contend that Amy Ellis Hall's testimony developed after the trial was crucial to their burden of proof on causation.

They also contend the Hospital intentionally and fraudulently represented to the court and opposing counsel that the Hospital could not identify a respiratory therapist named Judy or Judith who was present during Mrs. Kirkpatrick's labor and Joshua's birth. They point out there was a respiratory therapist named Judith McLerran and that the Hospital knew about her. After the trial, the Kirkpatricks located Judith McLerran, who confirmed she was a respiratory therapist at the Hospital in July 1985 when Joshua was born and that she worked the midnight shift. However, when questioned by the Kirkpatricks' counsel, she had no independent recollection of Joshua's birth.

They contend that the Hospital's intentional and fraudulent concealment of the presence of both Amy Ellis Hall and Judith McLerran during the labor and delivery prevented them from properly preparing their case and that they did not get a fair trial.

### B. The Hospital's Response

The Hospital contends that Amy Ellis Hall's post trial refreshed recollection affidavit is cumulative and only tends to impeach evidence presented at the trial. They also argue that they did not intentionally and fraudulently conceal the fact that Amy Ellis Hall was on duty and attended Mrs. Kirkpatrick, nor did they intentionally and fraudulently deny the existence of Judith McLerran. The Hospital asserts that Hospital records affirm that McLerran was not in the hospital, not on duty, and not employed by the Hospital when Joshua was born. The Hospital concludes that the trial court did not abuse its discretion in denying the Kirkpatricks' motion for new trial.

### C. The Applicable Law

#### 1. The Standard of Review

Whether to grant a new trial upon newly discovered evidence is within the

trial court's sound discretion. *Jackson v. Van Winkle*, 660 S.W.2d 807, 809 (Tex.1983). Unless the complaining party shows the trial court abused its discretion, the reviewing court does not disturb the trial court's decision. *Matter of Marriage of Yarbrough*, 719 S.W.2d 412, 415 (Tex.App.—Amarillo 1986, no writ); *Wilkins v. Royal Indem. Co.*, 592 S.W.2d 64, 69 (Tex.Civ.App.—Tyler 1979, no writ).

■ When the trial court considers a motion for new trial on the claim of newly discovered evidence, the court will consider the weight and importance of new evidence and its bearing and connection with evidence received at trial. *Jackson*, 660 S.W.2d at 809. The inquiry is not whether, upon the evidence in the record, the trial court could properly grant the motion in the particular case, but whether the refusal of the motion involves the violation of a clear legal right or a manifest abuse of judicial discretion. *Jackson*, 660 S.W.2d at 809.

■ Appellate review of a trial court's action under the abuse of discretion criteria is a question of law. *Jackson*, 660 S.W.2d at 810.

### 2. Criteria for Motion for New Trial on Newly Discovered Evidence

■ The trial court should not grant a new trial on newly discovered evidence unless: (1) the complaining party introduces admissible competent evidence showing the existence of newly discovered evidence; (2) the complaining party shows there was no notice of the existence of such evidence before trial; (3) the complaining party used due diligence to procure the evidence before trial; (4) the evidence is not merely cumulative to that already given and does not tend only to impeach the adversary's testimony; and (5) the evidence would probably produce a different result if the court granted a new trial. *Marriage of Yarbrough*, 719 S.W.2d at 415; *see also New Amsterdam Casualty Co. v. Jordan*, 359 S.W.2d 864, 866 (Tex.1962); *Wilkins*, 592 S.W.2d at 68–69.

■ Moreover, we should not look upon motions for new trial on the basis of newly discovered evidence with favor unless it appears the evidence would probably cause a different result. *Marriage of Yarbrough*, 719 S.W.2d at 415; *Eckert v. Smith*, 589 S.W.2d 533, 538 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.). Only when there could be no doubt that the party has really discovered new evidence of a conclusive tendency is it an abuse of discretion for the trial court to deny a new trial. *See Jackson*, 660 S.W.2d at 810.

### D. Application of Law to the Facts

■ During the trial, after the court sanctioned the Hospital and struck the Hospital's answer, the Kirkpatricks located Amy Ellis Hall. She testified at trial. She recalled Joshua's birth and testified he was "very dusky" but pinked up immediately after being given some oxygen. She said he became dusky again. She concluded that Joshua was cyanotic and hypoxic.

A nursery nurse testified that Joshua was dusky when he was born. The pediatrician testified that the nursery nurse had called him and told him that Joshua was looking dusky and required oxygen. Later the same morning after Joshua's birth, the nursery nurse said he continued to look dusky, meaning that he had a faint underlying bluish like appearance around the mouth, circumoral cyanosis, blue tinged extremities, hands and feet.

Both Mr. and Mrs. Kirkpatrick gave a more negative view of Joshua's initial appearance than the Hospital's witnesses. Mr. Kirkpatrick testified Joshua was blue and limp. He said initially Joshua did not cry. Mrs. Kirkpatrick also testified Joshua did not cry immediately. She stated he was small and blue and showed little movement.

Hall's affidavit in support of the Kirkpatricks' motion for new trial stated she recalled seeing the injection of some medication into Mrs. Kirkpatrick's I.V. in the delivery room, which did not appear in the record. She also said she recalled Joshua looked very limp and lethargic and very dusky. She said he was unresponsive, his muscle tone was not good, and he looked drugged. She testified that the other nurses, contrary to their testimony, did not celebrate when Joshua delivered but rather were distressed for some time and only cheered when Joshua started showing some responsiveness.

In our view, Amy Ellis Hall's refreshed recollection consists of evidence that is merely cumulative to that given at the trial and tends only to impeach the Hospital's testimony. We also conclude that this evidence would probably not produce a different result if a new trial were granted. We conclude the Kirkpatricks have not shown the trial court abused its discretion in refusing a new trial on the basis of the alleged new evidence produced by them in their motion for new trial.

Additionally, the trial court heard conflicting evidence about the Hospital's failure to timely designate Amy Ellis Hall as a witness with knowledge of relevant facts. The trial court also heard conflicting evidence on the failure of the Hospital to timely produce the name of Judith McLarren as a respiratory therapist who might have been on duty when Joshua was born. A trial court does not abuse its discretion when it makes a decision on conflicting evidence. *See Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978); *Zmotony v. Phillips,* 529 S.W.2d 760, 762 (Tex.1975) (per curiam). We overrule points of error six and seven.

Because of our disposition of the Kirkpatricks' points of error, we need not consider the Hospital's cross-point of error.

We affirm the trial court's judgment.